# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,

    v.

No. 3:16-cr-26 (JAM)

ANDREW ORECKINTO,
    *Defendant*.

## RULING DENYING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE GOVERNMENT EXHIBIT #201V

The advent of the Internet has posed any number of new legal questions, including whether evidence taken from a search of the Internet is admissible at trial. Suppose, for example, that a police officer runs a Google search and finds an image that is relevant to proving the identity of someone who committed a crime. Is the Internet image admissible without further independent verification or testimony from the source of the image at trial?

That is pretty much the question posed here. And the answer—as for many questions of evidence law—is that it depends on the *context* and *purpose* for which an Internet image is offered into evidence.

In this case, the police found an Internet image of the type of logo-branded sweatshirt believed to have been worn by a burglar while thieving cigarettes late one night from a commercial warehouse. Because a surveillance video showed that the burglar wore a mask, the type of clothing that the burglar wore was important to identifying who the burglar was. For reasons I explain below, I conclude that if the type of clothing worn by a criminal defendant is important to establishing his identity as the perpetrator of a crime, then an Internet image of clothing that is allegedly the same or similar to the type of clothing worn by the defendant is properly admissible at trial.

**BACKGROUND**

This case that is presently in mid-trial involves a burglary of thousands of cartons of cigarettes that occurred in March 2011 at a warehouse in Wethersfield, Connecticut. Surveillance video from inside the warehouse shows that the burglar was someone wearing a mask and otherwise dressed in mostly black clothing. There is no dispute that someone burglarized the warehouse, and the focus of trial has been on whether the culprit was the defendant Andrew Oreckinto.

Among several ways in which the Government has sought to implicate Mr. Oreckinto as the burglar is evidence about what clothing the burglar wore. A somewhat grainy photograph derived from the warehouse's surveillance video (Exhibit #201W) shows that the burglar was wearing black clothing on his upper body that had the stylized letters "SP" emblazoned across the chest:



Another one of the Government's exhibits (Exh. #201S) is a photograph of Mr. Oreckinto casually sitting on a motorcycle and facing the camera:



This photograph was obtained by law enforcement from the Facebook page of Mr. Oreckinto's spouse, and it was admitted without objection at trial. The photograph shows Mr. Oreckinto wearing a Harley Davidson black leather jacket and with at least two layers of clothing underneath. One of those layers is a zipped-down hooded sweatshirt. Although only the interior edges of the sweatshirt are visible in the photograph, it is enough to see that the sweatshirt is black and that it bears some kind of stylized white lettering or design that could be consistent with the type of sweatshirt worn by the masked burglar as shown in the surveillance video.

In order to help the jury make a comparison between what the masked burglar wore and what Mr. Oreckinto wore while sitting on his motorcycle, the Government offered at trial certain images derived from the Internet (Exhibit #201V) of the distinctive type and logo-branded sweatshirt that it contends that both the burglar and Mr. Oreckinto were wearing:

3







The lead detective testified at trial that he found these images by means of an Internet search.[1]

According to the detective, after he identified the block letters "SP" on the burglar's clothing as

shown in the surveillance video, he ran an Internet search for black-and-white hooded "SP"

sweatshirts, and the search came up with images depicting a "SouthPole" brand type of

sweatshirt. The detective did this Internet search within a week or two of the burglary. The

---

[1] Exhibit #201V is a compilation of two images that the detective found on the Internet. The top half of the exhibit has two interlocking images (one of a person wearing a black "SP" sweatshirt, along with a smaller picture-in-picture of a person wearing a white "SP" sweatshirt). The bottom half of the exhibit is a close-up of the "SP" logo in white letters against a black background, with the words "South Pole" clearly visible in the lower right-hand corner. According to the detective, apart from combining the images on the same page, he did not crop or otherwise alter the images. The separate images as originally copied by the detective before they were combined to make Exhibit #201V were marked as exhibits for identification at trial.

detective knew "SouthPole" to be a commercial brand of clothing, but was unclear whether he recovered the images from an official company website of the "SouthPole" manufacturer, and he could not identify the particular webpages or websites from which he copied the images.

Apart from testifying that he recognized the "SouthPole" brand, the detective did not contact any manufacturing company to confirm that it made this particular kind of sweatshirt or what dates it did so. Although the detective did not undertake this additional verification effort, counsel for Mr. Oreckinto disclaimed any argument that there was no such thing as the SouthPole brand of sweatshirts.[2]

Mr. Oreckinto moved *in limine* prior to trial (Doc. #58) to preclude the Internet images of the SouthPole sweatshirt (Exhibit #201V). I overruled the objection at trial and now explain my reasons for doing so in this ruling.

### DISCUSSION

Mr. Oreckinto sought preclusion on three grounds: (1) that the images were not authentic as required under Fed. R. Evid. 901, (2) that they were not relevant as required under Fed. R. Evid. 402, and (3) that they were otherwise unfairly prejudicial under Fed. R. Evid. 403. Each of these objections is considered in turn.

### *Authentication*

A party who seeks to introduce evidence at trial must, of course, bear the burden to show that the evidence is what the party claims it to be. Rule 901(a) of the Federal Rules of Evidence provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence,

---

[2] During the course of preliminary argument to address Mr. Oreckinto's motion, I asked defense counsel "I take it you're not arguing here that there is no such brand as SouthPole or no such sweatshirt of this type existed; is that right?" Counsel replied: "Right, I'm not arguing that."

the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

Although Rule 901 is often referred to as imposing an "authentication" requirement, this label may sometimes be misleading, because the focus of the rule is not necessarily whether the item of evidence is actually authentic, but whether it is actually what its proponent claims it to be. Indeed, often enough a party will introduce an item of evidence for the very purpose of showing that the evidence is *not* authentic (such as a counterfeit check in a bank fraud case or a counterfeit handbag in a trademark infringement case). Rule 901 does not stand in the way. The focus of Rule 901 is on whether the item of evidence (be it genuine or fake) is what the party claims it to be.

As the Second Circuit has observed, Rule 901 "does not definitively establish the nature or quantum of proof that is required preliminarily to authenticate an item of evidence." *United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014). More significantly still, "the type and quantum of evidence required is related to *the purpose for which the evidence is offered*, and depends upon a context-specific determination whether the proof advanced is sufficient to support a finding that the item in question is what its proponent claims it to be." *Ibid.* (emphasis added).

In addition, despite the fact that the prosecution's overall burden at trial is to prove its case beyond a reasonable doubt, the standard of proof for admissibility of its evidence is far less demanding. The Second Circuit has made clear that "the bar for authentication of evidence is not particularly high," and "the proponent need not rule out all possibilities inconsistent with authenticity," but need only adduce "sufficient proof . . . so that a reasonable juror could find in favor of authenticity or identification." *Ibid.* And, of course, once an item of evidence is

"authenticated" as required under Rule 901, this "merely renders evidence admissible, leaving the issue of its ultimate reliability to the jury," for which "the opposing party remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning," with all such challenges going to the weight of the evidence rather than its initial admissibility. *See ibid.*

Here, I am persuaded that Rule 901 is satisfied in light of the limited purpose for which the Government sought the admission of the Internet images of a SouthPole sweatshirt: namely, to show the physical appearance of the type of branded logo sweatshirt that the Government contends that Mr. Oreckinto was wearing at both the time of the crime and the time when he posed for a photograph with a motorcycle. Had video surveillance shown Mr. Oreckinto was holding a red soda can with white lettering on it, there would be nothing wrong with the Government introducing a generic image from the Internet of a can of Coca Cola for the jury to engage in its own visual comparison and to decide if that was what Mr. Oreckinto was holding. Or had this case been a bank robbery and a witness testified that the robber fled in a black BMW, there would be nothing wrong with the Government introducing an Internet image of a black BMW for the jury's consideration. In neither case would the rules of evidence require the Government to subpoena product marketing experts or witnesses from Coca Cola headquarters in Atlanta or from BMW in Germany to prove up that the images were genuine.

If the purpose of an image from the Internet is to allow for a visual comparison of items from a crime scene to products that are or were commercially available and displayed on the Internet, I do not understand Rule 901 to require the testimony of the product's manufacturer (or some other expert) to come to court to identify and authenticate an Internet image of the

product.[3] Depending on the purpose for which an Internet image is to be offered into evidence, there is no reason to conclude that the image may not be authenticated solely upon the basis of the testimony of a person who has accessed and retrieved the image. Even if the Internet images shown of the SouthPole sweatshirt might have been from some "knock off" manufacturer (as defense counsel contends), this would not negate a finding (as defense counsel conceded) that this type of sweatshirt—whoever its maker—actually existed, a fact which could be reasonably and readily inferred from the appearance of these images on the Internet.

I might rule differently if there were some legitimate basis to conclude that the SouthPole brand never existed or if there were some suspicion that the images in question were "doctored" or "planted" on the Internet for some nefarious purpose. Similarly, if the Internet images here were offered here for a different purpose, such as to prove an underlying fact about the identity of the sweatshirt's designer or manufacturer or about the specific date and manner of its manufacture, then the authentication requirement would likely apply more stringently.

Nor do I conclude that the calculus changes because of the fact that the images in question came from the Internet. To the contrary, the Second Circuit has noted that it is "skeptical" that there should be "greater scrutiny or particularized methods for the authentication of evidence derived from the Internet due to a heightened possibility for manipulation." *Vayner*, 769 F.3d at 131 n.5.

It is true that in *Vayner* the Second Circuit reversed a trial court's admission of certain Internet evidence. The Court of Appeals concluded there that it was error to allow the admission

---

[3] Of course, once defense counsel raised an authentication objection by way of pretrial motion, the prosecution might well have smoothed the path toward admission of the images had it tasked the detective with making an inquiry of the manufacturer or distributor to verify the images at issue as genuine articles. Although the hearsay rule would likely have barred the detective from testifying to the results of his verification efforts before the jury at trial, hearsay information from the detective could properly have been relied on by the Court outside the jury's presence to determine the admissibility of evidence. *See* Fed. R. Evid. 104(a); *Bourjaily v. United States*, 483 U.S. 171, 178 (1987).

of a social networking webpage that referred to a criminal defendant and that the prosecution claimed had been created by the criminal defendant, in the absence of any corroborating evidence to show that it was the criminal defendant—and not other persons—who had created the webpage at issue. *Id.* at 131. The Second Circuit noted that all of the information appearing on the webpage in question was known to the prosecution's chief cooperating witness and other persons "some of whom may have had reasons to create a profile page falsely attributed to the defendant." *Id.* at 132.

Here, by contrast, the Government does not contend that Mr. Oreckinto created any of the sweatshirt images depicted in Exhibit #201V. Nor does Mr. Oreckinto contend that someone "planted" these images on the Internet. The Government offered Exhibit #201V to show no more than the existence of a particular type of logo-branded sweatshirt that the jury could in turn visually compare to the clothing worn by the burglar shown in Exhibit #201W and the clothing worn by Mr. Oreckinto himself in Exhibit #201S. Accordingly, because the purpose for which the Internet evidence was offered here is dramatically different than the purpose of the Internet evidence in *Vayner*, the Second Circuit's ruling in *Vayner* is readily distinguishable and does not control here. For these reasons, I overruled Mr. Oreckinto's authentication objection at trial.

### *Relevancy*

Rule 402 of the Federal Rules of Evidence allows for the admission of relevant evidence, and Rule 401 in turn provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence," and if "the fact is of consequence in determining the action." Fed. R. Evid. 401. I conclude that the Internet images shown in Exhibit #201V are plainly relevant to the Government's effort to show the identity of Mr. Oreckinto as the warehouse burglar. In terms of visually comparing the clothing worn by the

masked burglar as shown in the fuzzy photograph of Exhibit #201W and the limited visible portion of sweatshirt worn by Mr. Oreckinto in Exhibit #201S, the Internet images of the SouthPole sweatshirt shown in Exhibit #201V are obviously helpful to a jury to determine if the articles of clothing may be the same. For these reasons, I overruled Mr. Oreckinto's relevance objection at trial.

### *Prejudice*

Rule 403 of the Federal Rules of Evidence provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Although Exhibit #201V may prejudice Mr. Oreckinto in the sense that it is helpful to the Government in proving the identity of the perpetrator, it does not *unfairly* prejudice him in any sense of suggesting that the jury should rely on some improper ground for decision. *See Old Chief v. United States*, 519 U.S. 172, 180 (1997) (explaining limitation of Rule 403 to preclude evidence that is unfairly prejudicial). Mr. Oreckinto has not alleged any grounds for prejudice other than the same grounds that he advances to challenge the authenticity of the exhibit. For these reasons, I overruled Mr. Oreckinto's prejudice objection at trial.

## CONCLUSION

For the foregoing reasons, I have DENIED Mr. Oreckinto's motion *in limine* (Doc. #58) to preclude the admission of Exhibit #201V.

It is so ordered.

Dated at New Haven, Connecticut this 10th day of February 2017.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge